JAMES R. DAWKINS, Judge ad hoc.
This was an action brought by the plaintiff, Clarence Caro, against the defendant, Edward McCall ef, wherein the plaintiff claimed the ownership of two cows and alleged that the defendant had illegally and unlawfully taken said cattle into his possession. Plaintiff prayed that the cattle be seized under a writ of sequestration which was granted. Thereafter, the plaintiff bonded the writ of sequestration and took the two cows into his actual possession.
The defendant answered the allegations of the petition in which he denied that the two cows belonged to the plaintiff and alleged that they belonged to him. Subsequently, the defendant filed a supplemental answer and reconventional demand wherein he claimed that since the filing of the suit, one of the animals had died, and made a reconventional demand by alleging that “the retention of said animal by plaintiff has damaged respondent in the sum of $500.00, the value of said animal.”
On the trial of the case before the judge of Section “C” of the City Court of the City of New Orleans, judgment was rendered in the favor of the defendant, Edward McCallef, and against the plaintiff, Clarence Caro, dismissing the suit at plaintiff’s cost. Further, judgment was rendered dismissing the reconventional demand as of non-suit. The plaintiff, Clarence Caro, was granted a suspensive appeal.
This case presents solely and entirely, as far as the ownership of the cattle is concerned, a moot question, since it was admitted on oral argument before this Court that at that time, both of the cows had died and, but for the existence of the reconventional demand, the suit might have been dismissed as presenting a moot question.
*135 The matter before the Court as to the ownership of the two cows involved in this suit was solely and entirely a question of fact, and after hearing all of the witnesses and the testimony that was presented in this case, the judge of the Court below reached the conclusion that the plaintiff had failed to prove that the cattle belonged to him, and rejected his claim to ownership. This Court will not reverse the judgment of a lower Court on a question of fact unless it is found that the conclusions reached by said Court are manifestly erroneous.
A review of the evidence in the case is about as follows: Mr. Caro, the plaintiff, claimed that the cows had always been in his possession until they were unlawfully taken by the defendant. He testified that he raised the cows from calves; that he positively knew that they were his property (prior to their deaths). He admitted on the trial of the case that one of the cows was dead and testified that he had sold the other for $67.00. Mr. Caro further testified that his cattle, which numbered approximately several hundred, were kept on an open range belonging to a Mr. Joe Brown, and that many other people used this same cattle range. He testified that he had never had any brands, vaccination marks or other identifying marks placed upon any of his cattle. Mr. George Merwin testified that he had known Mr. Caro since he was a child and lived across the street from the dairy operated by Mr. Caro. He testified that according to his knowledge, these two cows belonged to Mr. Caro. In addition to these witnesses, Mrs. Leah Caro, the wife of the plaintiff, testified that she believed the cattle to be the property of her husband and to the same effect was the testimony of Mr. John Caro, Sr., the father of the plaintiff, who testified that he was familiar with his son’s cattle and recognized these two cows as belonging to his son. There was the testimony of Patrolman Robert J. Cahill, who testified that he, along with two other officers, had gone with Mr. McCallef to the home of Mr. Caro and that Mr. McCal-lef pointed out two cows which he stated were his property, and that he went with Mr. McCallef to look at the cattle and saw an identification or vaccination mark and tag in one of the ears of each of the cows. Mr. Floyd Caro, a brother of the plaintiff, testified that he knew that the cows belonged to the plaintiff.
There was introduced in evidence a copy of a Bill of Information which had been filed in the Criminal District Court showing that Clarence Caro had been charged with the theft of five cows from Adam G. Dan-ner and two cows from Edward McCallef. The record shows that a nolle proseque had been entered as to both of the counts in the Bill of Information.
The defendant, in defense of the plaintiff’s claim to title to these two cows and in support of his claim to title thereto, called Edward E. McCallef, a son of the defendant, who testified that he was very familiar with the two cows; that he knew that they were born on his father’s property, and that his father was owner of them. Mr. McCallef testified that he assisted his father in placing the identifying marks in the ears of these cattle which consisted of the vaccination marks and also the tattoos which consisted of the letters and figure “EMc-4”, and that the cattle involved in this case had such identifying marks when found at Caro’s place. Pie was positive and there was no doubt in his mind that they were his father’s cattle.
The defendant also offered the testimony of Dr. John Lejeune, who was a veterinary doctor employed by the Department of Animal Disease Eradication of the United States Department of Agriculture. He testified that complete records were available to him of every person who owned cattle in the area where both the plaintiff and defendant resided and revealed all persons who had caused cattle to be vaccinated prior to June of 1958. He testified positively that Mr. Caro, the plaintiff, had *136 never had any cattle vaccinated or marked in any manner prior to June of 1958. He further testified that Mr. McCallef, the defendant, had kept his cattle vaccinated since July of 1954, and that the purpose of the vaccination was to protect the cattle against Brucellosis or Bang’s Disease; that the tattoo placed in one of the ears of each of the cattle shows the date of the vaccination; and that an identification of the owner is placed in the other ear. Pie testified that the records of his office revealed that Mr. McCallef had ten calves vaccinated on September 4, 1956, and twelve calves vaccinated on January 21, 1957. He further testified that the range where the plaintiff’s and the defendant’s cattle were kept was not an open range, but that each cattle owner had his own pasture fenced for the purpose of keeping his or their respective cattle.
The defendant, Edward McCallef, testified that he was a dairy farmer and that he had owned cattle all of his life; that he had always kept his cattle vaccinated against disease and tattooed for identification; that each of his cattle at a young age of three or four months had the letters “EMc-4” tatooed in the left ear and that “EMc-4” was his identifying mark and/or number. He testified that these two cows had that identifying mark in their ears, at the time he looked at them at Mr. Caro’s place, and that they also had vaccination tattooes which showed the date of the vaccination. He further testified that he found his cattle, which had been astray for about three or four months, at the plaintiff’s place and that he enlisted the aid of the police in going to Mr. Caro’s place for the purpose of re-claiming them. He testified positively that he looked into the ears of both of these cows and found the vaccination and tattoo marks which positively identified these cattle as being his property.
One other witness testified that he went to Mr. Caro’s place at a later time and found that one of the two cows had died, which resulted in the supplemental petition and the reconventional demand that is before the Court.
As stated at the outset, since this Court has been informed that both of the cows involved in this lawsuit are now dead, the question of the ownership is moot and the appeal could be dismissed except for the existence of the reconventional demand. In order to make a proper determination on the reconventional demand, it is necessary that we review the correctness of the judgment of the trial Court as to the ownership of the two cows as of the date of the filing of the suit and seizure of the cattle.
The evidence demonstrated very forcefully the highly disputed fact of ownership, for each claimant claims to have raised the cows from birth, and this cannot be true. The Judge who saw and heard the parties found for the defendant McCallef and rejected the plaintiff Caro’s claim of ownership. There is ample evidence to support this finding, and we concur in the opinion that the cows belonged to-McCallef.
As hereinabove observed, after the death of one of the cows, McCallef filed his re-conventional demand, averring that the animal had died and “that the retention of said animal by plaintiff has damaged respondent in the sum of $500.00, the value of said animal”, and praying for judgment in said sum. No evidence in support of this allegation was offered and the trial Judge non-suited the reconventional demand rather than to reject same.
On the trial, the evidence showed that Caro had sold the other animal for $67.00 and it was, of course, after said sale that the last of the two animals died.
We are of the opinion that there are two reasons why the trial Court was correct in entering a non-suit on the re-conventional demand. First, the allegations which presented it were not sufficient to support proof thereof, for mere possession of the cow by Caro at the time *137 that it died, without the alleging of some fault or responsibility for the death, presented no issue. Second, since the testimony showed that Caro had sold the cow that remained alive at the time of the trial, issues relating thereto should correctly be kept alive by the entry of a non-suit as to defendant.
We are informed in brief that after the original suit was filed, the plaintiff bonded the Writ of Sequestration and thereby was able to take the physical possession of the animals pending the suit. It was, apparently, during this time, that one died and Caro sold the other. Such a circumstance leaves open several rights that McCallef may or may not have, and he should not be cut off from making any legal demands available to him by a judgment rejecting his reconventional demand filed in this case.
For the reasons herein assigned, we conclude that the judgment of the trial Court is correct and it is affirmed at the appellant’s cost.
Affirmed.